1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VERONICA ORDAZ GONZALEZ, et al., | Case No. 1:18-cv-01558-BAM |
| Plaintiffs, | ORDER GRANTING IN PART DEFENDANT COUNTY OF FRESNO'S MOTION FOR SUMMARY JUDGMENT AND REMANDING CASE TO STATE COURT |
| v. | |
| COUNTY OF FRESNO, et al., | (Doc. Nos. 21, 44) |
| Defendants. | |

Currently before the Court is Defendant County of Fresno's ("Defendant") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[1] (Doc. Nos. 21, 44.) Plaintiffs Veronica Ordaz Gonzalez, Jose Ramos Santiago, Omar Perez, and Roberto Perez ("Plaintiffs") filed an opposition on June 12, 2020. (Doc. No. 56.) Defendant filed a reply on June 19, 2020. (Doc. No. 57.)

The matter was heard before Magistrate Judge Barbara A. McAuliffe on June 26, 2020. Nolan Kane appeared on behalf of Plaintiffs. Leslie Dillahunty appeared on behalf of Defendant. Having considered the record, the parties' briefing and arguments, and the relevant law, the Court GRANTS the motion for summary judgment as to Plaintiffs' First, Second, and Third Causes of Action and remands the remaining state law claims to the Superior Court of California for the County of Fresno.

---

[1] The parties have consented to the jurisdiction of the United States Magistrate Judge for all purposes pursuant to 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. (Doc. Nos. 5, 41, 43, 45.)

1        **I.      BACKGROUND**

2            Unless otherwise noted, the facts set forth below are uncontroverted.[2] As necessary, the

3   Court discusses further factual details in its analysis. The parties' legal conclusions, arguments,

4   and assertions are not considered facts.

5            On June 3, 2018, Fresno County Sheriff's Deputy Courtney Bush was dispatched to a

6   residence in Fresno County on a call reporting vandalism. (Doc. No. 21-2, Joint Statement of

7   Undisputed Material Facts, Undisputed Material Fact ("JUMF") 1.) Deputy Bush investigated the

8   call by interviewing the victim and a witness, the vandal's mother and father. (JUMF 2.) The

9   mother informed Deputy Bush that she had observed her son, Jesus Ramos, who is violent and

10  not allowed in the home due to mental illness and drug use, damage her husband's truck with a

11  tire rim the previous evening. (JUMF 3, 4.) She further informed Deputy Bush that Jesus Ramos

12  frequents 144 South Lind Avenue in Fresno. (JUMF 7; Doc. No. 21-3, Defendant's Separate

13  Statement of Undisputed Material Facts, Undisputed Material Fact ("DUMF") 19.)

14           Deputy Bush and Deputies Santos, Morse, and Reserve Deputy Moreno proceeded to 144

15  South Lind Avenue in Fresno in an attempt to locate Jesus Ramos. (JUMF 8; Doc. No. 56-1,

16  Plaintiffs' Statement of Disputed Facts, Undisputed Material Fact ("PDMF") 7.) Deputy Bush

17  walked up to the front of the residence and knocked on the door. (DUMF 21.) Deputy Bush

18  observed the front door to the residence open, but a security screen door remained closed.

19  (DUMF 22.) A female, later determined to be Plaintiff Veronica Ordaz Gonzalez, acknowledged

20  Deputy Bush. (JUMF 10.) Ms. Gonzalez was scared to open the front door because Deputy Bush

21  had her gun out. (PDMF 16.) Because she could not see who she was speaking to through the

22  security door, Deputy Bush asked Ms. Gonzales if she would open the screen door. (JUMF 11.)

23  Ms. Gonzalez said "no" and asked why the deputy was there. (*Id.*) Deputy Bush informed Ms.

24  Gonzalez that the deputies were looking for Jesus Ramos. (DUMF 24) Ms. Gonzalez told Deputy

25

26  [2]      In determining which facts are undisputed, the Court relies on Defendant's moving papers (Doc. No. 21),
Joint Statement of Undisputed Material Facts (Doc. No. 21-2), Separate Statement of Undisputed Facts and the

27  evidence cited therein, as well as the evidence cited in Plaintiffs' opposition and supporting papers, including
Plaintiffs' Objections to Defendant's Separate Statement of Undisputed Facts (Doc. No. 56-2) and Statement of

28  Disputed Facts (Doc. No. 56-1), and from other parts of the record that the Court has deemed undisputed after
considering all of the parties' arguments and objections.

1   Bush that she did not know the suspect. (PDMF 14.) Deputy Bush then asked Ms. Gonzalez,

2   since she would not open the screen door, if she would come outside to speak with her and Ms.

3   Gonzalez agreed to come out back. (JUMF 12.)

4   When Ms. Gonzales exited the back door, there were two deputies outside and she was

5   grabbed, handcuffed, and taken to the front yard. (PDMF 17.) Omar Perez and Roberto Perez

6   were ordered out of the house at gunpoint and Omar Perez, who was on his cell phone, was

7   ordered to drop the phone or he would be shot. (PDMF 24.) Omar Perez complied, and he and

8   Roberto Perez were handcuffed and frisked without consent. (PDMF 25.) Jose Ramos Santiago

9   was also searched, handcuffed, and taken outside. (PDMF 26.)

10   Ms. Gonzalez asked for a search warrant and told Deputy Bush that Deputy Bush could

11   not go into the home. (PDMF 20.) Ms. Gonzalez also told Deputy Morse and another unknown

12   deputy that they could not enter the home. (PDMF 21-22.) The deputies did not have a search

13   warrant to enter Ms. Gonzalez' residence. (PDMF 23.)

14   Deputy Bush, Deputy Morse, and Sergeant Dunn entered and searched the residence.

15   (PDMF 27.) Based on the deputies' investigation, a K-9 officer, Deputy Cervantes, was requested

16   to assist. (JUMF 13.) A deputy secured Plaintiffs' dog, Scooby, to a tree in the front yard with a

17   rope that was located on the premises. (JUMF 14.) While the deputies were searching the

18   residence, Deputy Cervantes shot Scooby after he freed himself by chewing through the rope and

19   approached the deputy and his K-9. (JUMF 16, 20; DUMF 34.) After animal services was

20   requested to assist, the deputies continued their investigation, cleared the residence, and

21   determined there was no one else inside. (JUMF 21-23; PDMF 27.)

22   Plaintiffs were handcuffed for approximately ninety (90) minutes. (PDMF 39.) After the

23   investigation of the residence was complete, deputies removed the handcuffs from Plaintiffs.

24   (JUMF 24.) Ms. Gonzalez was extremely emotional and crying heavily, Plaintiffs called 911, and

25   paramedics treated Ms. Gonzalez for rapid breathing, abdominal discomfort, and anxiety. (PDMF

26   44-45.)

27   Plaintiffs' complaint alleges violations of 42 U.S.C. § 1983 for the use of excessive force

28   in violation of the Fourth and Fourteenth Amendments; municipal liability for unconstitutional

customs, practices, or policies and failure to train; and state law claims for battery, negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, violation of California Civil Code § 52.1, trespass to chattels, conversion, and false imprisonment. (Complaint ("Compl."), Doc. No. 1-1 at Ex. A ¶¶ 27-80.) In addition to setting forth claims against Defendant, the complaint names "Officer Doe 1" and "Does 2-25, inclusive" as defendants. (*Id.* at ¶¶ 6-8.)  The only named defendants at the time of these motions is the County of Fresno.

According to the complaint, the defendants' actions and conduct on June 3, 2018 show Defendant's failure to train its officers and to prevent a violation of Plaintiffs' and other County citizens' individual rights. (Compl. at ¶ 15.) Plaintiff alleges Defendant has a long history of examples of its pattern and practice of using excessive force in handling issues with its citizens and there is a pattern and practice of officers not being properly disciplined for their actions involving use of excessive force. (*Id.* at ¶ 19.) As a result, Defendant has fostered an environment and created a culture and belief that it is permissible to use excessive force against civilians and their property without fear of repercussion, accountability, or disciplinary action. (*Id.*)

Plaintiffs further allege that the actions of the Doe defendants who were involved in this incident were contrary to Defendant's written policies and practices. (Compl. at ¶ 20.) Those actions were consistent with Defendant's culture of deliberate indifference to the use of excessive force in encounters with civilians when it is a grossly disproportionate response to a situation, and even when no reasonable basis exists for any use of force whatsoever, as in this case. (*Id.*) Despite Defendant's knowledge of these illegal policies and practices, Defendant's supervisory and policy-making employees have, maliciously and with deliberate indifference, taken no effective steps to terminate those policies and practices or to change the culture of its illegal policies and practices in dealing with its citizens, including Plaintiffs. (*Id.* at ¶ 21.) Defendant has not effectively disciplined or otherwise supervised officers who engage in these policies and practices, has not effectively trained officers regarding the proper constitutional and statutory limits of the exercise of their authority, and has sanctioned the policies and practices through their deliberate or grossly negligent indifference to their detrimental effect on local residents' constitutional rights. (*Id.*)

4

1       The complaint further alleges that Defendant failed to remedy or address these violations

2   despite knowledge of civil rights abuses by its employees and knowingly and with deliberate

3   indifference promulgated policies on the use of excessive force by officers that deliberately

4   disregarded the constitutional rights of the citizens of the County of Fresno. (Compl. at ¶ 22.)

5   Plaintiffs allege that the acts, omissions, practices, policies, failure to discipline, and long history

6   of lack of support by Defendant of its police officers involved in such situations and incidents of

7   civil rights abuses were ratified and approved by Defendant and its employees and/or agents,

8   resulting in Plaintiffs' injuries and damages. (*Id.*)

9       **II.**    **LEGAL STANDARD**

10       Summary judgment is appropriate when the pleadings, disclosure materials, discovery,

11   and any affidavits provided establish that "there is no genuine dispute as to any material fact and

12   the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is

13   one that may affect the outcome of the case under the applicable law. *See Anderson v. Liberty*

14   *Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a

15   reasonable [trier of fact] could return a verdict for the nonmoving party." *Id.* Summary judgment

16   must be entered, "after adequate time for discovery and upon motion, against a party who fails to

17   make a showing sufficient to establish the existence of an element essential to that party's case,

18   and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S.

19   317, 322 (1986).

20       The party seeking summary judgment "always bears the initial responsibility of informing

21   the district court of the basis for its motion, and identifying those portions of the pleadings,

22   depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

23   which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S.

24   3 at 323. The exact nature of this responsibility, however, varies depending on whether the issue

25   on which summary judgment is sought is one in which the movant or the nonmoving party carries

26   the ultimate burden of proof. *See Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir.

27   2007). If the movant will have the burden of proof at trial, it must "affirmatively demonstrate that

28   no reasonable trier of fact could find other than for the moving party." *Id.* (citing *Celotex*, 477

1   U.S. at 323). In contrast, if the nonmoving party will have the burden of proof at trial, "the

2   movant can prevail merely by pointing out that there is an absence of evidence to support the

3   nonmoving party's case." *Id.*

4     If the movant satisfies its initial burden, the nonmoving party must go beyond the

5   allegations in its pleadings to "show a genuine issue of material fact by presenting affirmative

6   evidence from which a jury could find in [its] favor." *FTC v. Stefanchik*, 559 F.3d 924, 929 (9th

7   Cir. 2009) (emphasis in original). "[B]ald assertions or a mere scintilla of evidence" will not

8   suffice in this regard. *Id.* at 929; *see also Matsushita Electric Industrial Co. v. Zenith Radio*

9   *Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56[],

10  its opponent must do more than simply show that there is some metaphysical doubt as to the

11  material facts.") (citation omitted). "Where the record taken as a whole could not lead a rational

12  trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*,

13  475 U.S. at 587 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289

14  (1968)).

15    In resolving a summary judgment motion, "the court does not make credibility

16  determinations or weigh conflicting evidence." *Soremekun*, 509 F.3d at 984. Instead, "[t]he

17  evidence of the [nonmoving party] is to be believed, and all justifiable inferences are to be drawn

18  in [its] favor." *Anderson*, 477 U.S. at 255. Inferences, however, are not drawn out of the air; the

19  nonmoving party must produce a factual predicate from which the inference may reasonably be

20  drawn. *See Richards v. Nielsen Freight Lines*, 602 F.Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

21  810 F.2d 898 (9th Cir. 1987).

22  ### III. OBJECTIONS

23    The parties filed objections to certain evidence submitted in support of Defendant's

24  motion and Plaintiffs' opposition. In particular, Plaintiffs object to the Declaration of Ryan

25  Hushaw in its entirety. The parties also assert various objections to the evidence cited in support

26  of Defendant's Separate Statement of Undisputed Material Facts and Plaintiffs' Separate

27  Statement of Disputed Material Facts.

28    Declaration of Ryan Hunshaw

Plaintiffs seek an exclusionary sanction pursuant to Federal Rule of Civil Procedure 37 to preclude consideration of the Declaration of Ryan Hushaw ("Hushaw Declaration") submitted in support of the motion. The Hushaw Declaration generally describes Defendant's policies regarding training of its deputies, the use of force, search and seizure, canines, and conducted energy devices. (*See* Hushaw Decl., Doc. No. 21-4.) Plaintiffs argue that this declaration is inadmissible in its entirety because Hushaw was not disclosed as witness, an expert, or a non-retained expert in any of the County's disclosures and was not otherwise brought to Plaintiffs' attention. (Doc. No. 56 at 8.)

Rule 26(a) of the Federal Rules of Civil Procedure requires parties to disclose the name and, if known, address and telephone number of each individual likely to have discoverable information, along with the subjects of that information, that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment. Fed. R. Civ. P. 26(a)(1)(A)(i). Parties also are required to supplement any incomplete or incorrect disclosures in a timely manner. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c)(1) provides that a party who fails to provide information required by Rule 26 "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial, unless the failure was substantially justified or is harmless."

The Ninth Circuit has explained that "even absent a showing in the record of bad faith or willfulness, exclusion is an appropriate remedy for failing to fulfill the required disclosure requirements of Rule 26(a)." *Yeti by Molly Ltd. v. Deckers Outdoor Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) ("Implicit in Rule 37(c)(1) is that the burden is on the party facing sanctions to prove harmlessness."). Generally, this rule acts as a "self-executing ... and automatic sanction to provide a strong inducement for disclosure of material." *Id.* (citations and internal quotation marks omitted). Nonetheless, the Ninth Circuit gives "particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)." *Id.* Among other factors, the availability of less drastic sanctions and the public policy favoring disposition of cases on their merits guide the court's discretion. *Wendt v. Host Int'l, Inc.,* 125 F.3d 806, 814 (9th Cir. 1997).

1

2          Plaintiffs contend that Defendant's lack of disclosure was not justified because Hushaw

3   has been employed by Defendant for nineteen years and Defendant has been aware of Plaintiffs'

4   claims brought pursuant to *Monell v. Dep't of Social Servs*, 436 U.S. 658 (1978) ("*Monell*") since

5   the action was first filed in October of 2018. (Doc. No. 56 at 9.) Plaintiffs further believe that the

6   failure to disclose Hushaw was not harmless and they have been prejudiced by the lack of

    disclosure because they did not have an opportunity to depose Hushaw. (*Id.*)

7          Defendant, in turn, argues that Hushaw's declaration was prepared by Defendant's

8   counsel in support of the motion for summary judgment for foundational purposes as it pertains to

9   the previously produced policies and the identity of the declarant was not known until preparation

10  of the motion was underway. (Doc. No. 57 at 5.) According to Defendant, the declaration was

11  attorney work product up until the moment it was filed. (*Id.*)  Defendant further contends that the

12  policies and procedures that Hushaw authenticates in his declaration were fully and completely

13  produced to Plaintiffs as part of Defendant's Supplemental Initial Disclosures and therefore the

14  failure to disclose is harmless. (*Id.* at 4-6.) Additionally, Plaintiffs could have taken a deposition

15  of unknown or unidentified individuals regarding Defendant's policies pursuant to Federal Rule

16  of Civil Procedure 30(b)(6), but failed to do so. (*Id.* at 4.)

17         It is undisputed that Defendant did not disclose Hushaw as a witness in its initial

18  disclosures or in any later, supplemental disclosure. Although Defendant argues that counsel was

19  not aware of Hushaw's identity until preparation of the motion for summary judgment was

20  underway, Defendant was aware of the nature of Plaintiffs' claims and was on notice that its

21  policies, customs, and practices were at issue since the inception of this litigation. As Defendant

22  concedes, if Plaintiffs would have noticed a Rule 30(b)(6) deposition, Hushaw would have been

23  produced and his identity would have been disclosed earlier. (Doc. No. 57 at 5.) Thus,

24  Defendant's claim that Hushaw's identity was unknown until preparation of the motion was

25  underway appears to be due to a failure to disclose and not because this information was not

26  reasonably available to Defendant. (*See* Doc. No. 57-2.) *See* Fed. R. Civ. P. 26(a)(1)(E) ("A party

27  must make its initial disclosures based on the information then reasonably available to it. A party

28

is not excused from making its disclosures because it has not fully investigated the case[.]").

Likewise, Defendant's argument that the declaration itself was work product misconstrues Plaintiffs' objection. Plaintiffs do not challenge Defendant's failure to disclose the declaration itself and instead contend that Hushaw should have been disclosed as a witness. Defendant has not established that Hushaw's identity as a witness revealed counsel's mental impressions or trial strategy and was therefore subject to work product protection. *Compare, e.g., In re: Harmonic Inc., Securities Litigation,* 245 F.R.D. 424 (N.D. Cal. 2007) (holding that identities of confidential witnesses were not protected under attorney work-product); *with Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.,* 2005 WL 1459555 (N.D. Cal. June 21, 2005) (finding that the identity of witnesses plaintiff's counsel had interviewed in preparing the complaint were protected by work product privilege).

Although the lack of disclosure here does not appear to have been willful, lack of willfulness does not amount to justification. "Parties, aware of the 'self-executing' and 'automatic' nature of Rule 37(c)(1) sanctions, have a right to expect that only disclosed witnesses will be used to support the disclosing party's claims and defenses." *Rhodes v. Sutter Health*, 949 F. Supp. 2d 997, 1010 (E.D. Cal. 2013) (citing *Yeti by Molly, Ltd.,* 259 F.3d at 1106). "They should be able to rely on Rule 26 disclosures and not be required to second guess whether a disclosing party has purposefully omitted a potential witness or done so accidently." *Id.*  The Court accordingly finds that Defendant's failure to disclose Hushaw as a witness was not substantially justified.

Rule 26 does not require the Court to exclude the declaration if the nondisclosure is harmless.  Defendant argues that the failure to disclose Hushaw was harmless because the policies he authenticates were provided to Plaintiffs during discovery. (Doc. No. 57 at 5.) The Court agrees in part. Paragraphs 10 through 19 of the Hushaw Declaration appear to quote directly from the policies which Defendant provided to Plaintiffs in Defendant's supplemental disclosures. (*See* Doc. Nos. 21-4, 57-2 at Ex. A.) The subjects of the information described in paragraphs 10 through 19 were made known to Plaintiffs during discovery. However, paragraphs 4 through 9 of

the Hushaw Declaration do not directly quote these policies and he testifies as a percipient

witness. (*See id.*) For instance, in paragraph 5 of his declaration, Lieutenant Hushaw states that

"[t]he Fresno County Sheriff's Office has a custom, policy and practice of implementing and

executing searches as a result of and in connection with the investigation and attempt to locate an

individual who has purportedly committed a felony." (*See* Doc. No. 21-4 at 2.) This information

is not set forth in the policies Defendant provided to Plaintiffs in its supplemental disclosures and

instead appears to be based upon knowledge Lieutenant Hushaw obtained through his

employment with the Fresno County Sheriff's Office. (*See* Doc. Nos. 21-4 at 1, 57-1 at Ex. A.)

Rule 37(c)(1) "'is an either/or standard," meaning a party need only show that its failure

was either substantially justified or harmless in order to avoid exclusion." *Holen v. Jozic*, 2018

WL 5761775, at *2 (W.D. Wash. Nov. 2, 2018) (quoting *R & O Constr. Co. v. Rox Pro Int'l Grp.,*

*Ltd.*, 2011 WL 2923703, at *3 (D. Nev. July 18, 2011)). Additionally, the Advisory Committee

notes to Rule 26 recognize:

> Broad, vague, and conclusory allegations sometimes tolerated in notice pleading--
> for example, the assertion that a product with many component parts is defective
> in some unspecified manner--should not impose upon responding parties the
> obligation at that point to search for and identify all persons possibly involved in,
> or all documents affecting, the design, manufacture, and assembly of the product.
> The greater the specificity and clarity of the allegations in the pleadings, the more
> complete should be the listing of potential witnesses and types of documentary
> evidence. Although paragraphs (1)(A) and (1)(B) by their terms refer to the factual
> disputes defined in the pleadings, the rule contemplates that these issues would be
> informally refined and clarified during the meeting of the parties under subdivision
> (f) and that the disclosure obligations would be adjusted in the light of these
> discussions. The disclosure requirements should, in short, be applied with common
> sense in light of the principles of Rule 1, keeping in mind the salutary purposes
> that the rule is intended to accomplish. The litigants should not indulge in
> gamesmanship with respect to the disclosure obligations.

Fed. R. Civ. P. 26, advisory committee's note. Although violations of Rule 26 may warrant

evidence preclusion, this is a particularly harsh sanction and courts should balance the

consequences to be imposed. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1247

(9th Cir. 2012); *see ACT Grp., Inc. v. Hamlin,* 2016 WL 7634679, at *10 (D. Ariz. May 11, 2016)

(finding that the court appropriately sanctioned a party's failure to disclose witnesses by limiting

witness testimony to matters properly disclosed during deposition); *see also Yeti by Molly,* 259

1    F.3d at 1106 ("[W]e give particularly wide latitude to the district court's discretion to issue

2    sanctions under Rule 37(c)(1)."); *Keener v. U.S.,* 181 F.R.D. 639, 642 (D. Mont. 1998) (finding

3    that "[i]f full compliance with Rule 26(a) and 26(e)(1) is not made, Rule 37(c)(1) mandates some

4    sanction, the degree and severity of which are within the discretion of the trial judge").

5          With these principles in mind, the Court finds that the failure to disclose Hushaw as a

6    witness was neither substantially justified nor harmless with respect to paragraphs 4 through 9 of

7    the Hushaw Declaration. Therefore, the Court has not considered these portions of the declaration

8    in ruling on the motion. However, the Court must apply the Rules with an eye toward "common

9    sense," keeping in mind the purposes that the Rules are intended to accomplish. Fed. R. Civ. P.

10   26, advisory committee's note. With respect to paragraphs 1 through 3 and 10 through 19 of the

11   Hushaw Declaration, the potential prejudice that Plaintiffs claim they will suffer is not so severe

12   as to warrant exclusion in light of the fact that these portions of the declaration merely provide

13   foundation for information that was made known to Plaintiffs during discovery.[3] Accordingly, the

14   Court declines to exclude these paragraphs pursuant to Rule 37(c)(1).[4]

15       <u>Other Evidentiary Objections</u>

16         The parties submitted numerous objections to the evidence cited in Defendant's Separate

17   Statement of Undisputed Material Facts and Plaintiffs' Separate Statement of Disputed Material

18   Facts. (Doc. Nos. 56-2, 57-1.) Not every objection will be addressed by the Court individually, as

---

[3]      At oral argument, counsel for Plaintiffs argued that they did not seek leave to depose Hushaw during the six-month pendency of the motion because fact discovery had closed, and the Court had denied other requests to modify the scheduling order in this case. However, the policies quoted in paragraphs 10 through 19 of the Hushaw Declaration were disclosed prior to the close of fact discovery. (Doc. No. 57-2 at Ex. A.) While it is notable that Defendant did not disclose its policies until the day before the scheduled fact discovery cutoff, Plaintiffs apparently did not object to the timing of disclosure or otherwise seek to obtain discovery regarding Defendant's written policies. Furthermore, the Court previously granted the parties' request to extend the fact discovery deadline in this case to allow further deposition of Deputy Bush on the basis of a report produced late in discovery. (Doc. No. 11.) The Court had accordingly granted requests to modify the scheduling order where good cause was shown, consistent with the requirements of Federal Rule of Civil Procedure 16(b)(4) and the Court's advisements to the parties when the scheduling order issued. (*See* Doc. No. 9 at 5.)

[4]      The Court notes that Plaintiffs' allegations in the complaint regarding Defendant's customs, policies, and practices were largely broad and unspecified and, as Defendant argues in its reply, the scope of Plaintiffs' claims in that regard appear to have been somewhat of a moving target. (*See* Doc. Nos. 1, 57 at 2.)  Plaintiffs, in their opposition and at the hearing of the motion, clarified that the alleged basis for Defendant's liability under *Monell* is that Ms. Gonzalez told three different officers at the incident on June 3, 2018, that she did not consent to a search of her home. (Doc. No. 56 at 8-10.) The Court therefore notes that the Hushaw Declaration has limited relevance in light of the fact that Plaintiffs do not challenge Defendant's written policies.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

doing so is neither necessary nor the practice of this Court in the summary judgment context.

The parties submitted various objections that the statements of material facts misstate evidence and/or are irrelevant. (Doc. Nos. 56-2, 57-1.) Defendant likewise objected that certain statements of the evidence were argumentative. (Doc. No. 57-1.) However, these objections are duplicative of the summary judgment standard itself. *See Burch v. Regents of Univ. of Cal.,* 433 F.Supp.2d 1110, 1119–20 (E.D. Cal. 2006) ("[O]bjections to evidence on grounds that the evidence is irrelevant, speculative, argumentative, or constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself."); *Connor v. California*, 2013 WL 321703, at \*1 (E.D. Cal. Jan. 28, 2013); *Carden v. Chenega Sec. & Protection Services, LLC,* 2011 WL 1807384, at \*3-4 (E.D. Cal. May 10, 2011); *Arias v. McHugh,* 2010 WL 2511175, at \*5-6 (E.D. Cal. June 17, 2010); *Tracchia v. Tilton,* 2009 WL 3055222, at \*3 (E.D. Cal. Sept. 21, 2009). Given the Court's duty to determine whether there exists a genuine dispute as to any material fact, these objections are both unnecessary and unhelpful and are overruled. *Burch v. Regents of Univ. of California*, 433 F.Supp.2d 1110, 1120 (E.D. Cal. 2006).

Plaintiffs' hearsay objections are likewise overruled. (*See* Doc. No. 56-2.) Declarations which contain hearsay are admissible for summary judgment purposes if they can be presented in admissible form at trial. *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2004). Furthermore, "[i]f the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay." *Calmat Co. v. U.S. Dep't of Labor*, 364 F.3d 1117, 1124 (9th Cir. 2004). At this stage, the Court does not find Plaintiffs' hearsay objections to be preclusive of the evidence submitted.

The Court does not rule on the remainder of Plaintiffs' specific objections to Defendant's Material Facts Nos. 19, 20,  23, 25, 26, 32, and 36 because the Court does not rely on the evidence at issue. *Wilson v. Kiewit Pac. Co.*, 2010 WL 5059522, at \*10 (N.D. Cal. Dec. 6, 2010).

### IV.   DISCUSSION

#### A.   *Monell* Claim

Plaintiffs' First and Second Causes of Action assert claims for violations of 42 U.S.C. §

1983 for the use of excessive force in violation of the Fourth and Fourteenth Amendments. (Doc. No. 1-1 at Ex. A.) Plaintiffs' Third Cause of Action asserts municipal liability for unconstitutional customs, practices, or policies and failure to train. (*Id.*)

The parties do not dispute that Defendant, a public entity, cannot be held vicariously liable for the actions of its employees in violation of section 1983 on a theory of *respondeat superior.*[5] (Doc. Nos. 21-1 at 8, Doc. No. 56 at 7.) *See Monell*, 436 U.S. 658. Rather, a municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. Municipal liability may be premised on: (1) conduct pursuant to a formal or expressly adopted official policy; (2) a longstanding practice or custom which constitutes the "standard operating procedure" of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Thomas v. County of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014); *Price v. Sery*, 513 F.3d 962, 966 (9th Cir. 2008). It is the plaintiff's burden to demonstrate that the municipality promulgated or endorsed an unconstitutional policy, practice or custom. *Trevino v. Gates*, 99 F.3d 911, 918-20 (9th Cir. 1996), *holding modified by Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001); *Duran v. City of Porterville*, 2015 WL 3794930, at *8 (E.D. Cal. June 17, 2015).

> **1.    Plaintiffs have the burden to demonstrate an unconstitutional policy, custom or practice.**

At oral argument, counsel for Plaintiffs asserted that it was not their burden to prove their *Monell* claim at this stage in the proceedings. However, this argument misconstrues the applicable standard on a motion for summary judgment when the nonmoving party has the burden of proof at trial.

---

[5]    In conceding that Defendant cannot be held vicariously liable for the actions of its employees, Plaintiffs again attempt to reargue their motions for leave to amend and to certify an interlocutory appeal. (Doc. No. 56 at 6-7.) Plaintiffs' arguments regarding the merits of those motions, both of which have been denied, have no bearing on Defendant's motion for summary judgment and have not been considered.

1   The party moving for summary judgment bears the initial burden of demonstrating the

2   absence of a genuine issue of fact for trial. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.

3   2001) (citing *Celotex,* 477 U.S. at 323). However, when the nonmoving party has the burden of

4   proof at trial, the moving party need only point out "that there is an absence of evidence to

5   support the nonmoving party's case." *Id.* (citing *Celotex* at 325; *Fairbank v. Wunderman Cato*

6   *Johnson,* 212 F.3d 528, 532 (9th Cir. 2000) (holding that the *Celotex* "showing" can be made by

7   "pointing out through argument—the absence of evidence to support plaintiff's claim")). Once the

8   moving party carries its initial burden, the adverse party must provide affidavits or other sources

9   of evidence that "set forth specific facts showing that there is a genuine issue for trial." *Id.* (citing

10  Fed. R. Civ. P. 56(e); *Celotex,* 477 U.S. at 323–24; *Nissan Fire & Marine Ins. Co. v. Fritz*

11  *Cos.,* 210 F.3d 1099, 1107 (9th Cir. 2000) (holding that once the moving party carries its initial

12  burden of production, "the nonmoving parties were obligated to produce evidence in response"));

13  *Fairbank*, 212 F.3d at 532 ("Under the federal standard a moving defendant may shift the burden

14  of producing evidence to the nonmoving plaintiff merely by 'showing'—that is, pointing out

15  through argument—the absence of evidence to support plaintiff's claim.").

16  As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry

17  of summary judgment, after adequate time for discovery and upon motion, against a party who

18  fails to make a showing sufficient to establish the existence of an element essential to that party's

19  case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322

20  (explaining plaintiff's failure to produce proof to establish elements of cause of action upon which

21  he bears burden of proof at trial warrants summary judgment). As the *Celotex* court reasoned,

22  "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of

23  factually unsupported claims or defenses, and . . . it should be interpreted in a way that allows it

24  to accomplish this purpose." *Id.* at 323-24; See Cameron v. Craig, 713 F.3d 1012 (9th Cir. Jan.11,

25  2013) ("[Plaintiff] has not identified any custom or policy of the County.... The County is

26  therefore entitled to summary judgment on the § 1983 claim.").. Therefore, the moving party is

27  not necessarily required to produce evidence showing the absence of a genuine issue of material

28  fact on an issue on which the nonmoving party bears the burden of proof. *Id.* at 324. Instead, "the

burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.*.

Here, the Court finds that Defendant has met its "initial responsibility of informing the district court of the basis for its motion" and showing that there is an absence of evidence to support Plaintiffs' *Monell* claim. *Celotex,* 477 U.S. at 323. Defendant is therefore not required to produce evidence showing the absence of a genuine issue of material fact on an issue which Plaintiffs bear the burden of proof at trial. *Id.* at 324. Instead, the burden shifts to Plaintiffs to provide evidence sufficient to establish that there is a genuine issue of material fact as to each element essential to their case on which they will bear the burden of proof at trial. *Id.* at 322-25. With respect to Plaintiffs' *Monell* claim, it is Plaintiffs' burden at trial to demonstrate an unconstitutional policy, practice, or custom. *Trevino,* 99 F.3d at 918-20; *Duran*, 2015 WL 3794930, at *8. As discussed herein, Plaintiffs have failed to identify a governmental policy, practice, or custom on which *Monell* liability might be premised. There are no material disputes of fact on Plaintiffs' *Monell* claim and Defendant is therefore entitled to summary judgment. *Trevino,* 99 F.3d at 920 ("Normally, the question of whether a policy or custom exists would be a jury question. However, when there are no genuine issues of material fact and the plaintiff has failed to establish a prima facie case, disposition by summary judgment is appropriate.").

### 2. Plaintiffs challenge a single occurrence of purported unconstitutional conduct

Plaintiffs do not challenge Defendant's formal, written policies. Instead, Plaintiffs contend that they are able to establish *Monell* liability on the basis of Ms. Gonzalez "unequivocal" testimony that Defendant's deputies were not permitted to enter her house.[6] (Doc. No. 56 at 10-

---

[6]  Notably, Plaintiffs' complaint appears to premise *Monell* liability on allegations of a pattern and practice of using excessive force. (*See* Doc. No. 1-1 at Ex. A ¶¶ 19-22 ("The COUNTY OF FRESNO and its Sheriff's Office has a long history of examples of its pattern and practice in the use of excessive force in handling issues with its citizens.")) The complaint does not specify that Defendant had a policy, practice, or custom of unlawful searches. *See Fernandez v. McKnight*, 2014 WL 352238, at *2, n.7 (E.D. Cal. Jan. 31, 2014) ("[N]ew argument or allegations in a summary judgment opposition do not raise triable issues of fact."); *Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006) (explaining that on summary judgment, the court will not consider new arguments or allegation raised outside of the operative pleadings); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) ("[O]ur precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also AE ex rel. Hernandez v. County of Tulare,* 666 F.3d 631, 637 (9th Cir. 2012) (finding that *Monell* claims "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."); *J.M. by & Through*

11.) According to Plaintiffs, "there is evidence that three different officers were told **not** to enter the home, and . . . the Sergeant ratified this conduct by entering the home (apparently) based on his officers' word that consent was given ***while Plaintiffs were handcuffed and detained***[.]" (Doc. No. 56 at 11.) (Emphasis in original). Plaintiffs contend that there is a question of fact whether "such warrantless entries were indeed 'a traditional method of carrying out policy'" and these entries evidence "a pattern and practice of executing warrantless searches throughout the Department." (*Id.*) On reply, Defendant asserts that Plaintiffs have not submitted any evidence of an unconstitutional policy, practice, or custom as three different officers entering Ms. Gonzalez' home is an isolated incident insufficient to establish *Monell* liability. (Doc. No. 57 at 6-7.)

Absent a formal governmental policy, Plaintiffs must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Trevino,* 99 F.3d at 918 (quoting *Gillette v. Delmore,* 979 F.2d 1342, 1346–47 (9th Cir. 1992)). The custom must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy."  *Id.* (quoting *Monell*, 436 U.S. at 691). Liability for improper custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy.  *Id.* (citations omitted). A single occurrence of unconstitutional action by a non-policymaking employee is insufficient to establish the existence of an actionable municipal policy or custom.  *Davis v. City of Ellensburg,* 869 F.2d 1230, 1233–34 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a 'permanent and well settled' practice may liability attach for injury resulting from a local government custom." *Thompson v. City of Los Angeles,* 885 F.2d 1439, 1444 (9th Cir. 1989).

"Cases which have found triable issues of fact involve specific evidence of actions from which a broad policy, practice, or custom—evidence that extends beyond the individual officer defendant's actions—can be inferred." *Jarbo v. County of Orange,* 2010 WL 3584440, at *10

---

*Rodriguez v. Cty. of Stanislaus*, 2018 WL 5879725, at *4 (E.D. Cal. Nov. 7, 2018) (holding that plaintiffs may meet the pleading standard for *Monell* liability by specifying "the content of the policies, customs, or practices the execution of which gave rise to [the plaintiff's] constitutional injuries.").

1   (C.D. Cal. Aug. 30, 2010); *see also Sanchez v. City of Fresno,* 914 F. Supp. 2d 1079, 1096 (E.D.

2   Cal. 2012) ("The line between 'isolated or sporadic incidents' and 'persistent and widespread

3   conduct' is not clearly delineated, although where more than a few incidents are alleged, the

4   determination appears to require a fully-developed factual record.") "In contrast, no triable issues

5   of fact have been found where the evidence is limited to the facts presented in the case before the

6   court, or where there is a lack of specificity in the evidence." *Jarbo*, 2010 WL 3584440, at *12;

7   *compare Davis,* 869 F.2d at 1233–34 (single incident of excessive force inadequate to establish

8   liability); *Meehan v. County of Los Angeles,* 856 F.2d 102, 107 (9th Cir. 1988) (two incidents

9   insufficient to establish custom); *with Menotti v. City of Seattle,* 409 F.3d 1113, 1147 (9th Cir.

10  2005) (triable issue of fact existed as to whether five incidents of suppression of political speech

11  amounted to an unconstitutional policy or custom); *see also Jarbo*, 2010 WL 3584440, at *9–13

12  (reviewing circumstances in which *Monell* custom/practice claims were permitted past summary

13  judgment).

14          Viewing Plaintiffs' evidence in the light most favorable to them, the undisputed evidence

15  falls far short of establishing a "persistent and widespread" practice such that it constitutes

16  "permanent and well settled" policy. *Trevino,* 99 F.3d at 919. Plaintiffs provide evidence of Ms.

17  Gonzalez' statements to Deputy Bush, Deputy Morse, and an unknown deputy that they could not

18  search her home on June 3, 2018, while Ms. Gonzalez detained for approximately ninety (90)

19  minutes. (PDMF 20-22, 39.) According to Plaintiffs' evidence, Deputy Bush, Deputy Morse, and

20  Sergeant Dunn then entered and searched the residence together. (PDMF 27.) Ms. Gonzalez'

21  three refusals all occurred in the context of a single incident consisting of the same allegedly

22  unlawful search. Even when viewing the three refusals separately, the conduct at issue was

23  contemporaneous and therefore cannot support a finding that Defendant's practices were of

24  sufficient duration, frequency, and consistency that they may be construed as a traditional method

25  of carrying out policy. *See Connick v. Thompson,* 563 U.S. 51, 63 n. 7 (2011)

26  ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would

27  provide notice to the [municipality] and the opportunity to conform to constitutional dictates.")

28  (internal quotations and citation omitted); *Gonzalez v. County of Merced*, 289 F.Supp.3d 1094,

1100 (E.D. Cal. 2017) (finding that three events of a defendant groping the plaintiff and two coworkers on the same day were contemporaneous conduct that could not amount to a pattern or custom).

Plaintiffs cite to *Parish v. Lansdale*, 2019 WL 4849612 (D. Ariz. Sept. 30, 2019) in support of their contention that Ms. Gonzalez' three refusals amount to a pattern and practice of executing warrantless searches. (Doc. No. 56 at 11.) In *Parish,* the court found that there was a material issue of fact as to whether the defendant police department had a policy authorizing officers to enter residences, without exigent circumstances and probable cause or consent, by placing a foot on the threshold of the door to the residence to prevent a resident from closing the door. *Parish,* 2019 WL 4849612, at *14. In reaching this conclusion, the court relied on officer testimony that he acted in accordance with his training when he placed his foot on the threshold, that there was a "common consensus" between officers in the department that the threshold is not part of the premises, that officers "had been trained . . . for a very long time" to put a foot in the doorway and this practice was "a common place [] practice." *Id.*

In contrast, there is no evidence before the Court indicating that the deputies here were acting in accordance with any training or a common consensus when they searched Ms. Gonzalez' home. Unlike the plaintiffs in *Parish,* Plaintiffs have not presented evidence that the deputies here were trained to conduct unconstitutional searches or that such searches were common practice.

To establish a policy or custom of unconstitutional searches, Plaintiffs must show a pattern through the similarity of incidents, their timing, and subsequent actions by Defendant, if any. *Valdez v. Leeds*, 2019 WL 4138945, at *13 (E.D. Cal. Aug. 30, 2019). They have failed to do so. Even assuming that the June 3, 2018 search was unconstitutional, the evidence Plaintiffs have presented is limited to the facts of this case and, at best, involved an isolated incident. The evidence does not raise an inference that the deputies' conduct was "not an aberration or deviation from standard operating procedure but was instead in conformity with it." *Jarbo*, 2010 WL 3584440, at *12 (internal quotation marks and citation omitted). Thus, Plaintiffs cannot meet their burden of showing a genuine dispute of material fact as to the existence of a practice or

1   custom supporting *Monell* liability.

2       **3.     Sergeant Dunn cannot ratify the allegedly unconstitutional conduct**

3       Alternatively, Plaintiffs argue that there is a question of fact regarding whether Ms.

4   Gonzalez had capacity to consent while handcuffed and crying, and Sergeant Dunn's "blind

5   acceptance of the claimed 'consent'" in these circumstances "creates a question of fact regarding

6   the ratification of conduct clearly in violation of the Fourth Amendment." (Doc. No. 56 at 11-12.)

7   Defendant counters that there is no basis to assert Sergeant Dunn was an authorized

8   decisionmaker or individual with final policymaking authority. (Doc. No. 57 at 8-9.)

9       A municipality is generally not charged with the unconstitutional discretionary actions of

10  municipal employees. *Gillette*, 979 F.2d at 1348. However, a municipality may be liable under

11  section 1983 where "an official with final policy-making authority ratified a subordinate's

12  unconstitutional decision or action and the basis for it." *Id.* at 1346-47; *see also Sheehan v. City &*

13  *Cty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part, cert. dismissed in part*

14  *sub nom. City & Cty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600 (2015) ("Ratification . . .

15  generally requires more than acquiescence."). "Whether a particular official has final policy-

16  making authority is a question of state law." *Gillette*, 979 F.2d at 1346 (citing *Jett v. Dallas*

17  *Indep. Sch. Dist.,* 491 U.S. 801, 737 (1989); *City of St. Louis v. Praprotnik,* 485 U.S. 112, 123-24

18  (1988) (plurality opinion)).

19      In California, a county sheriff department's final policymaker is the sheriff. *Johnson v.*

20  *Cty. of Riverside*, 2015 WL 13649444, at *13 (C.D. Cal. Feb. 17, 2015); *see also* Cal. Gov't Code

21  § 26600 ("The sheriff shall preserve peace, and to accomplish this object may sponsor, supervise,

22  or participate in any project of crime prevention."); Fresno County Ordinance 2.43.090 ("[T]he

23  duties of [the sheriff-coroner-public administrator of the county], including those performed in ex

24  officio capacity, shall be performed by one person elected to such office in the manner prescribed

25  by law."); *see also Collins v. City of San Diego*, 841 F. 2d 337, 341 (9th Cir. 1988) ("Although a

26  police sergeant may have discretion to recommend hiring, firing, and discipline of employees, he

27  or she is not the city official responsible for establishing final department policy in [the

28  employment] area."). There is no evidence Sergeant Dunn was responsible for establishing any of

1  Defendant's policies. Plaintiffs' suggestion that Sergeant Dunn was a "final policymaking

2  authority" for Defendant whose actions can give rise to municipal liability is therefore

3  unpersuasive.

4       Defendant does not bear the burden of proof on *Monell* liability at trial and thus need only

5  point to the insufficiency of Plaintiffs' evidence to meet their burden at the summary judgment

6  stage of this litigation. *Celotex*, 477 U.S. at 325. They have done so. Because Plaintiffs have

7  failed to produce evidence supporting their allegations of municipal liability in opposition to the

8  motion, the Court finds that Defendant is entitled to summary judgment on Plaintiffs' First,

9  Second, and Third Causes of Action.

10      **B.**    **Remand**

11       Plaintiffs' opposition requests that the Court decline to exercise supplemental jurisdiction

12  over the state law claims in the event it dismisses Plaintiffs' federal claims. (Doc. No. 56 at 20.)

13  At oral argument, counsel for Defendant likewise requested that the Court exercise its discretion

14  to remand Plaintiffs' state law claims.

15       This action was removed from the Superior Court of California for the County of Fresno

16  on the basis of federal question jurisdiction. (*See* Doc. No. 1.) The Court has supplemental

17  jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. A district court may decline to

18  exercise jurisdiction over supplemental state law claims if "the district court has dismissed all

19  claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when federal

20  claims are dismissed before trial . . . pendent state claims should also be dismissed." *Religious*

21  *Tech. Ctr. v. Wollersheim,* 971 F.2d 364, 367–68 (9th Cir. 1992). "When removal is based on the

22  presence of a federal cause of action, a district court may remand pendent or supplemental state

23  law claims to the state court once the federal claims have been eliminated." *Castro ex rel. Castro*

24  *v. City of Mendota*, 2012 WL 4468419, at *11–12 (E.D. Cal. Sept. 26, 2012) (citation omitted). In

25  fact, "it is generally preferable for a district court to remand remaining pendent claims to state

26  court." *Id.*

27       Considering judicial economy, convenience, fairness, and comity, and because summary

28  judgment has been granted on all of Plaintiffs' federal claims, the Court will decline to exercise

supplemental jurisdiction over the remaining state law claims. *See Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7 (1988); *City of Colton v. Am. Promotional Events, Inc.-West,* 614 F.3d 998, 1008 (9th Cir. 2010) ("Because the district court did not err in granting summary judgment on the federal claims, it did not abuse its discretion in dismissing the state-law claims."); *Religious Tech.,* 971 F.2d at 367–68.

**V.     CONCLUSION AND ORDER**

Based on the foregoing, IT IS HEREBY ORDERED that:

1.     Defendant's motion for summary judgment is GRANTED as to Plaintiffs' First Cause of Action pursuant to 42 U.S.C. § 1983 for Use of Excessive Force in Violation of the Fourth Amendment, Second Cause of Action pursuant to 42 U.S.C. § 1983 for Use of Excessive Force in Violation of the Fourteenth Amendment, and Third Causes of Action for Municipal Liability for Unconstitutional Custom, Practice, or Policy, Failure to Train, and Supervisory Liability (*Monell*); and

2.     The remainder of this action, consisting of Plaintiffs' Fourth Cause of Action for Battery, Fifth Cause of Action for Negligence, Sixth Cause of Action for Intentional Infliction of Emotional Distress, Seventh Cause of Action for Negligent Infliction of Emotional Distress, Eighth Cause of Action for California Civil Code § 52.1—Bane Act, Ninth Cause of Action for Trespass to Chattels, Tenth Cause of Action for Conversion, and Eleventh Cause of Action for False Imprisonment, is hereby REMANDED to the Superior Court of California for the County of Fresno.

IT IS SO ORDERED.

Dated:   __July 20, 2020__             ___/s/ *Barbara A. McAuliffe*___
                                        UNITED STATES MAGISTRATE JUDGE